FILED

2008 Apr-28  PM 05:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| DIANE SMITH and JEFF SMITH, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO.:  2:05-CV-1759-VEH |
| ) | |
| ZENKO J. HRYNKIW, M.D., ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

Plaintiffs Diane Smith ("Ms. Smith") and her husband, Jeff Smith ("Mr. Smith"), bring this medical malpractice case against Defendants Zenko Hrynkiw, M.D. ("Hrynkiw"), and Baptist Health System, Inc. d/b/a Baptist Montclair Medical Center ("Baptist").  The seven (7) pending motions are:  (1) Hrynkiw's Motion for Summary Judgment (Doc. #55) filed on November 15, 2007; (2) Hrynkiw's Motion to Preclude (Doc. #56), relating to the testimony of Dr. Alan Rosenthal ("Rosenthal") filed on November 15, 2007; (3) Baptist's Motion for Summary Judgment (Doc. #57) filed on November 15, 2007; (4) Baptist's Motion to Preclude (Doc. #59), relating to the testimony of  Rosenthal filed on November 15, 2007; (5) Baptist's Motion to Preclude (Doc. #61), relating to the testimony of  Debra Hirsch ("Hirsch") filed on

November 15, 2007; (6) Plaintiffs' Motion to Strike (Doc. #71), relating to the affidavits of Benjamin Fuller ("Fuller") and Lisa Jones ("Jones") filed on January 2, 2008; and (7) Hrynkiw's Motion to Strike (Doc. #77) filed on January 14, 2008, relating to the affidavit of Rosenthal.

Plaintiffs filed their respective oppositions to Docs. #55, #56, #57, #59, and #61 on January 2, 2008.  *See* Docs. #65, #69 (combined response to Docs. #56, #59), #66, #70.  Hrynkiw and Baptist then filed their respective reply documents (Docs. #78, #74,[1] #73, #76) on January 14, 2008.

As for Plaintiffs' Motion to Strike (Doc. #71), Defendant Baptist filed its opposition (Doc. #75) on January 14, 2008.   Finally, as to Hrynkiw's Motion to Strike (Doc. #77) filed on January 14, 2008, relating to the affidavit of Rosenthal, Plaintiffs filed their response (Doc. #79) on January 24, 2008.

As discussed more fully below, Hynkiw's Motion for Summary Judgment is due to be and is **HEREBY DENIED**.  Baptist's Motion for Summary Judgment is due to be and is **HEREBY GRANTED IN PART** and **DENIED IN PART**. Additionally, Hrynkiw's Motion to Preclude, Baptist's Motion to Preclude, and Hrynkiw's Motion to Strike all relating to Rosenthal and Baptist's Motion to Preclude

---

[1]Only Baptist filed a reply to Plaintiffs' opposition to Defendants' Motions to Preclude Rosenthal's expert testimony.

2

relating to Hirsch are due to be and are **HEREBY DENIED**.  Finally, Plaintiffs'

Motion to Strike is **GRANTED** fully as to the Fulmer affidavit (*see* Doc. #57 at Ex.

4) and is **GRANTED IN PART** and **DENIED IN PART** as to the Jones affidavit.

(*see id.* at Ex. 2).

## II.    STATEMENT OF FACTS[2]

This medical malpractice lawsuit arises out of a head laceration that Ms. Smith

suffered from in connection with a <u>cervical fusion operation</u> performed by Hrynkiw

at Baptist on November 6, 2003.  The purpose of the operation was to correct pain

and numbness in her right hand.  Upon awakening from surgery, Ms. Smith had a cut

on the upper right side of her head which had been sutured by Dr. Michael Powell

("Powell") and had been bandaged with a gauze betadine dressing by a registered

nurse.  (*See* Doc. #68 at Ex. 10 at Bates No. 00028; *id.* at Ex. 12 (collection of

photos)).  Also,  Ms. Smith's entire <u>left</u> arm was numb and the <u>left</u> side of her body

was swollen.  Additionally, while the symptoms of her <u>right</u> hand were corrected, her

<u>left</u> hand was constricted in a craw-like grip.

---

[2]If the facts are in dispute, they are stated in the manner most favorable to the
non-moving party.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.
1993).  Accordingly, these are the facts for summary judgment purposes only.  They
may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d
1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes
of reviewing the rulings on the summary judgment motion [ ] may not be the actual
facts.'") (citation omitted).

Post-operative studies indicate that Ms. Smith suffered a spinal cord injury. Ms. Smith is now permanently disfigured and paralyzed on the left side of her body. Post-operative measures to correct these problems have been unsuccessful.  As summarized in her opposition to summary judgment, Ms. Smith complains about three (3) specific post-surgical medical conditions:  (1) a "gash" on her head; (2) a brachial plexus injury; and (3) a spinal cord injury.  (Doc. #65 at 7 ¶ 18; Doc. #66 at 8 ¶ 42).[3]

The parties hotly dispute the material facts surrounding Hrynkiw's presence in the operating room and/or the scope of his involvement at the time Ms. Smith was

_____

[3]In responding to these facts, Defendants do not dispute the existence of these post-operative outcomes, but rather challenge the spinal cord injury as one which could have been caused by a strong head lift when Ms. Smith was being extubated in the recovery room.  (Doc. #78 at 4 ¶ 18; Doc. #73 at 2 ¶ 42).  However, Rosenthal never testified that in his opinion a strong head lift <u>could have caused Ms. Smith's injuries</u>, and Defendants never asked him a question that specifically tied their hypothetical ones to Ms. Smith's post-operative conditions.  Instead, their questions were very generalized.  (*See, e.g.*, Doc. #167 at Ex. 2 at 126 ("Q.  Is there any risk to the patient when they bring their head forward?  A.  Yeah, they can damage.  Q.  How can they damage.  A.  They can damage the spinal cord, and they can also wind up with obstruction in the airway.")).  Moreover, while Baptist argues that to the extent Ms. Smith's head injury was connected to the use of a Mayfield-Kees ("Mayfield") headrest, it "was clearly within the operative site and beyond the control or function of any of [Baptist's] employees"(Doc. #73 at 2 ¶ 43), it is undisputed that Ms. Smith's head was not being operated on when she went in for cervical fusion surgery on November 6, 2003, and Rosenthal testified that all of Ms. Smith's injuries were "remote" from the surgery that Hrynkiw performed on her.

4

turned for the second time at the conclusion of her surgery.[4]  More specifically (and by way of example only as other evidence in the record also supports the existence of a material factual dispute as to Hrynkiw's role during Ms. Smith's second turn), as Plaintiffs point out, Hrynkiw testified in his deposition that he was involved in turning Ms. Smith, that Ms. Smith would have been turned twice, and that she was turned carefully.  (Doc. #67 at Ex. 7 at 71-73).

Only after giving his deposition did Hrynkiw submit an affidavit stating that he was not in the room for the second turn and that he did not remove the Mayfield headrest.  (Doc. #55 at Ex. 1 ¶ 4 ("I did not return to the operation room after leaving at 7:55 a.m. to participate any further in the care and treatment of Ms. Smith."); *id.* ¶ 5 ("I did not participate in turning Ms. Smith from the prone to the supine position after her surgical incision was closed.  Furthermore, I did not have any role or involvement in the removal of the Mayfield-Kees skeletal fixation device at the completion of Ms. Smith's surgery.")).[5]

_____

[4]The second turn is critical because it is undisputed that Ms. Smith had no evidence of any injuries at the time of the first turn.

[5]The court notes that, in his affidavit, Hrynkiw does not attempt to explain any of his potentially conflicting sworn testimony (*e.g.*, affirmatively testifying during his deposition that Ms. Smith was turned carefully versus subsequently swearing in his affidavit that he was not present when Ms. Smith was turned for the second time).  While this omission is possibly at odds with the rule of *Van T. Junkins & Assoc. Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given

On the other hand, Hrynkiw's Operative Report indicates that the patient was "closed in the usual fashion" which supports a factual inference that Hrynkiw returned to the room to verify the closure, immediately after which, Ms. Smith would be turned back over to the supine position (*i.e.*, the second turn).  (Doc. #55 at Ex. 1 at Ex. B at 2).  Furthermore, Baptist's witness Jones testified about Hrynkiw's presence during the second turn and more particularly indicated that Hrynkiw was the person who actually removed the Mayfield headrest.  (Doc. #68 at Ex. 9 at 77 ("Q. Were either Dr. Hrynkiw or Dr. Powell in the room when the Mayfield headrest was removed?  A.  Yes."); *id.* at 49-50 ("Q.  Since it's not reflected in the record, can you tell me who was responsible for turning Diane Smith back – turned back over on her back after the surgery?  A.  The attendees in the case from the beginning that I – the original people that turned her prone are going to turn her back.  Q.  And that would be Joseph Houser, Yushonda Lofton and Lisa Jones?  [objection]  A.  No, that would be Dr. Hrynkiw and Dr. Powell."); *id.* at 63-64 ("Q.  When is the Mayfield headrest removed?  A.  After the patient is turned from prone to supine.  Q.  And Dr. Hrynkiw was the one who removed the Mayfield headrest?  A.  Yes.")).

---

clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."), the court does not need to reach that issue in denying summary judgment.

The complaint includes seven (7) counts, one (1) of which has been dismissed.[6] (*See* Doc. #37, entered on January 24, 2007).  The remaining counts are:  count one for medical negligence against Hrynkiw; count three for medical negligence against Baptist; count four for negligent screening, hiring, training, supervision, and retention against Baptist; count five for combining and concurring negligence against all defendants; count six for negligence/*res ipsa loquitur* against all defendants; and count seven is for loss of consortium by Mr. Smith against all defendants.

## III.    ANALYSIS

### A.    Medical Malpractice Generally

With regard to a plaintiff's burden of proof in medical malpractice actions, § 6-5-548 of the Alabama Medical Liability Act ("AMLA") provides that:

> Plaintiff shall have the burden of proving by substantial evidence that the healthcare provider failed to exercise such reasonable care, skill and diligence as other similarly situated healthcare providers in the same general line of practice ordinarily have and exercise in a like case.

Ala. Code § 6-5-548(a).  Normally this burden requires a plaintiff to produce expert medical testimony to establish a breach of the standard of care.  More specifically, a plaintiff must typically introduce the testimony of a medical expert witness to

---

[6]On January 24, 2007, the medical malpractice claim against Powell was dismissed without prejudice (Doc. #37) on Plaintiffs' voluntary notice of dismissal (Doc. #35) filed on January 8, 2007.

7

establish (1) the appropriate standard of care, (2) that the defendant breached the standard of care, and (3) that the breach proximately caused the plaintiff's injuries. *See, e.g., University of Alabama Health Services Foundation, P.C. v. Bush*, 638 So. 2d 794, 798 (Ala. 1994) ("In a medical malpractice case, the plaintiff must prove by expert testimony that the physician breached the standard of care and by the breach proximately caused the plaintiff's injury.") (citations omitted).

However, in certain <u>limited</u> situations, Alabama law recognizes the application of the *res ipsa loquitur* doctrine in a medical malpractice case. As the Supreme Court of Alabama summarized in *Dews v. Mobile Infirmary Ass'n*, 659 So. 2d 61 (Ala. 1995):

> In *Jones v. Bradford*, 623 So.2d 1112, 1114-15 (Ala. 1993), this Court explained:
>
> > "A medical malpractice plaintiff must generally present expert testimony to establish the breach of the applicable standard of care by the defendant healthcare provider. Ala. Code 1975, § 6-5-548; *Parrish v. Spink*, 284 Ala. 263, 224 So. 2d 621 (1969); *Rosemont, Inc. v. Marshall*, 481 So. 2d 1126 (Ala. 1985). An exception to this rule exists where the lack of care is so apparent as to be within the ken of the average layman. This Court has identified four specific situations that do not require that the breach of the applicable standard of care be established by the testimony of a medical expert:
> >
> > "'1. where a foreign instrumentality is found in the plaintiff's body following surgery; 2. where the injury

complained of is in no way connected to the condition for which the plaintiff sought treatment; 3. where the plaintiff employs a recognized standard or authoritative medical text or treatise to prove what is or is not proper practice; and 4. where the plaintiff is himself or herself a medical expert qualified to evaluate the doctor's allegedly negligent conduct.'

"*Allred v. Shirley*, 598 So.2d 1347, 1350 (Ala. 1992) (quoting *Holt v. Godsil*, 447 So.2d 191 (Ala. 1984))."

. . .

"An exception to the above rule is applied to those cases where a physician's or surgeon's want of skill or lack of care is so apparent as to be within the comprehension of laymen and to require only common knowledge and experience to understand [it; in such cases] expert evidence is not required. *See* 141 A.L.R. pp. 12, 13, for citation of innumerable authorities.

"Those cases which have applied the above rule concern the leaving of objects in a patient's body, such as forceps, gauze, sponges, needles, etc. (*see* 162 A.L.R. 1299), or injuries to the body remote from the area of the operation, such as an injury to an arm and shoulder during an operation for appendicitis (*Ybarra v. Spangard*, 25 Cal. 2d 486, 154 P.2d 687, 162 A.L.R. 1258 [ (1944) ] ), or an injury to an eye during the same type of operation. ( *Meadows v. Patterson*, 21 Tenn. App. 283, 109 S.W. 2d 417 [(1937)] )."

*Dews*, 659 So. 2d at 63-64.

More recently, the Supreme Court of Alabama reconstituted the expert testimony exception in medical malpractice cases:

Accordingly, we reformulate the exception to the rule, as interpreted by *Loeb*, to recognize first, a class of cases " 'where want of

9

> skill or lack of care is so apparent . . . as to be understood by a layman, and requires only common knowledge and experience to understand it,'" *Wyatt*, 460 So. 2d at 161 (quoting *Dimoff v. Maitre*, 432 So. 2d 1225, 1226-27 (Ala. 1983)), such as when a sponge is left in, where, for example, the wrong leg is operated on, or, as here, where a call for assistance is completely ignored for an unreasonable period of time. A second exception to the rule requiring expert testimony applies when a plaintiff relies on " ' "a recognized standard or authoritative medical text or treatise," ' " *Anderson*, 778 So. 2d at 811, or is himself or herself a qualified medical expert.

*Ex parte HealthSouth Corp.*, 851 So. 2d 33, 39 (Ala. 2002).  As the Supreme Court of Alabama further clarified in *Ex parte HealthSouth*:

> A plaintiff need not offer testimony of an expert witness in a medical-malpractice case (a) when the act or omission is in a class of cases where requires only common knowledge and experience to understand it, *Wyatt*, 460 So.2d at 161 (quoting *Dimoff v. Maitre*, 432 So. 2d 1225, 1226-27 (Ala.1983)), such as when a foreign object is left in, the wrong body part is operated on, or a call for assistance is ignored for an unreasonable time; or (b) when a plaintiff either relies on a recognized standard or authoritative medical text or treatise, *Anderson*, 778 So. 2d at 811, or is himself a qualified medical expert.  **To the extent *Loeb* and other cases to like effect are in conflict, they are hereby overruled.**")

*Ex parte HealthSouth*, 851 So. 2d at 42 (emphasis added) (internal quotations omitted).

In *Ex parte HealthSouth*, the plaintiff sued under the AMLA after falling in the hospital when nursing staff failed to respond to her assistance call.  Although the Alabama Supreme Court did not characterize the case as a *res ipsa loquitur* one, it did

determine that no expert testimony on the standard of care was necessary. *Id.* at 40

("This Court recognized that this exception 'has *usually* been applied' where *res ipsa*

*loquitor* [sic] is applicable or where the injury is not 'connected to the condition for

which the plaintiff sought treatment,' 516 So.2d at 566 (emphasis added), but this

language [from the AMLA] does not require the conclusion that these are the only

two circumstances in which a layperson would have common knowledge sufficient

to understand whether the standard of care has been breached.").

### B.    Expert Testimony

*Daubert* motions are evaluated consistent with Rule 702 of the Federal Rules

of Evidence, which allow expert testimony when (1) the witness is qualified as an

expert; and (2) his expertise "will assist the trier of fact to understand the evidence

or to determine a fact in issue . . . ." Fed. R. Evid. 702.  More specifically, Rule 702

states:

> If scientific, technical, or other specialized knowledge will assist the
> trier of fact to understand the evidence or to determine a fact in issue, a
> witness qualified as an expert by knowledge, skill, experience, training,
> or education, may testify thereto in the form of an opinion or otherwise,
> if (1) the testimony is based upon sufficient facts or data, (2) the
> testimony is the product of reliable principles and methods, and (3) the
> witness has applied the principles and methods reliably to the facts of
> the case.

Fed. R. Evid 702.  Rule 702 must be read in conjunction with three (3) seminal

decisions by the Supreme Court of the United States related to expert testimony: *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *General Electric Co. v. Joiner*, 522 U.S. 136 (1997); and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

Additionally, all rulings on *Daubert* motions are reviewed under an abuse of discretion standard. *See, e.g., Joiner*, 522 U.S. at 141 ("All evidentiary decisions are reviewed under an abuse-of-discretion standard."). "An abuse of discretion can occur where the district court applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment." *United States v. Estelan*, 156 Fed. Appx. 185, 196 (11th Cir. 2005) (citing *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir.2005)).

Concerning the issue of whether to hold a *Daubert* hearing, the Eleventh Circuit has explained:

> In this case, after the government moved to exclude Tressel's testimony, the district court assessed the reliability of his opinions by conducting a thorough *Daubert* hearing in which Tressel was asked, repeatedly, what the bases for his opinions were. While some expert testimony will be so clearly admissible that a district court need not conduct a *Daubert* hearing in every case, *see Kumho Tire*, 526 U.S. at 150-52, 119 S. Ct. at 1175-76, in this case, the district court's decision to evaluate the admissibility of Tressel's opinions in the context of a pre-trial hearing was a perfectly reasonable one. Moreover, Frazier has not attacked the timing or conduct of the *Daubert* hearing. And the record amply establishes that Frazier was afforded every opportunity at the hearing to

12

adduce the foundations of Tressel's challenged opinions.  The district court did not abuse its discretion when it conducted a *Daubert* hearing.

*United States v. Frazier*, 387 F.3d 1244, 1264 (11th Cir. 2004).  Relatedly, the Eleventh Circuit "also review[s] a trial court's decision on whether to hold a *Daubert* hearing for abuse of discretion."  *Cook ex rel. Estate of Tessier v. Sheriff of Monroe* 402 F.3d 1092, 1113 (11th Cir. 2005).[7]

Finally, the burden under Rule 702 rests squarely with the proponent of the expert witness:

> The proponent of the expert testimony carries a substantial burden under Rule 702. "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir.1999) (citing *Daubert*, 509 U.S. at 592 n. 10, 113 S. Ct. 2786). Thus, the proponent must demonstrate that the witness is qualified to testify competently, that his opinions are based on sound methodology, and that his testimony will be helpful to the trier of fact.  *See, e.g., Frazier*, 387 F.3d at 1260 ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion...."); *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir.2002); *Maiz*, 253 F.3d at 664.

*See Cook*, 402 F.3d at 1107.

[7]No one has requested a *Daubert* hearing.

13

C.      Application

1.      *Daubert* and AMLA Expert Motions

The court has conducted an in-depth review of the record in this case and concludes that neither Rosenthal nor Hirsch is due to be precluded from testifying under *Daubert* and/or Fed. R. Evid. 702.  Additionally, the court concludes that Hirsch is permitted to testify consistent with the requirements of § 6-5-548(b) of the AMLA.

a.      Rosenthal

In their Motions to Preclude, Defendants do not challenge the credentials of Rosenthal.  Instead, Defendants primarily attack the admissibility of Rosenthal's testimony on the basis of reliability.  More specifically, Defendants maintain that Rosenthal's testimony is too speculative to be admissible.  Defendants also argue that Rosenthal's testimony will not be helpful to the jury.

Regarding his background, Rosenthal explains that his experience includes "perform[ing] hundreds of the same laminectomy procedure that was performed on Diane Smith, and [] actively performing the same laminectomy procedure within one year of November 2003."  (Doc. #67 at Ex. 1 at 1).  Rosenthal also states that he "continue[s] to perform the same laminectomies in [his] practice as a neurosurgeon." (*Id.*).  Defendants do not dispute Rosenthal's record of extensive relevant experience.

As Rosenthal summarized in his affidavit[8] regarding the standard of care applicable to Hrynkiw:[9]

> Therefore, in my opinion, to a reasonable degree of medical certainty, the defendant neurosurgeon, Dr. Zenko Hrynkiw, departed from reasonable care, skill and diligence that other neurosurgeons in the same general line of practice ordinarily have and exercise in like cases, by failing to properly control the turning and positioning of Diane Smith, postoperatively, on the second turn, so as to prevent the events and injuries described above.

> In my opinion, the breach of the acceptable standard of care occurred postoperatively in the operating room and was not the result of the technical surgical procedure. In my medical opinion, such events

---

[8]Rosenthal's affidavit is located within Doc. #67 at Exhibit 1. Baptist argues in its Motion to Strike (Doc. #77) that the affidavit is due to be stricken because it constitutes a contradictory change in his prior testimony and alternatively fails to procedurally comply with Rule 56(e) of the Federal Rules of Civil Procedure. The court agrees with Plaintiffs that Rosenthal's affidavit does not violate the *Van T. Junkins* rule, *see* n.5, *supra*, but rather is a refinement of the opinions that he had already provided through his expert report and his deposition testimony. Baptist's objection under Rule 56(e), which states in part that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith[,]" is also misplaced. First, the court notes that the Fulmer affidavit relied upon by Baptist is similarly procedurally deficient. (*see* Doc. #57 at Ex. 4 (no documents attached)). Second, the documents that Rosenthal referenced in his affidavit were already a part of the record. Third, the court, in its discretion, will not strike an affidavit based on a hyper-technical interpretation and application of the Federal Rules, especially in the absence of any corresponding controlling case authority in support of Baptist's point. Therefore neither basis relied upon by Baptist is persuasive, and Baptist's Motion to Strike Rosenthal's affidavit is **DENIED**.

[9]The citations in this section of the opinion are not intended to be an exhaustive list demonstrating the reliability of Rosenthal's testimony; rather, they are helpful illustrations of the overall non-speculative nature of his opinions.

could not occur absent a breach of the acceptable standard of medical care, generally employed by like neurosurgeons.

(Doc. #67 at Ex. 1 at 4-5).

Regarding the cause of Ms. Smith's injuries, Rosenthal testified:

And then we know the evolution of that into now the presence of a syrinx, something occurred to her between - - wait a second - - between the induction or from the start of the procedure to the closure of the procedure that was untoward.

The only explanation that fits all of those things together is the movement of the head within the headrest, the positioning of the patient so that the brachial plexus injuries can occur to someone who is not appropriately buttressed, and to the cord itself, and the brachial plexus injuries will occur to somebody who falls out of the headrest, falls to one side or another, and is prevented from hitting the ground or somehow or other pulls on the arm in an excessive manner and bangs the cord against some portion of its hard bony covering. . . .

I can't - - you know, I will tell you we don't have anybody - - we don't have any eyewitnesses, but the circumstantial evidence is overwhelming. It's as overwhelming as the evidence that I did not disagree with that the operation was indicated and done on the right side.

(Doc. #67 at Ex. 2 at 140-41 (emphasis added)).

Later in his deposition, as Rosenthal explained:

Q. In your opinion did the three injuries that you mentioned, the head laceration, the brachial plexus injury, and the spinal nerve injury, did those occur while the patient was being positioned in the operating room on November 6th, 2003?

[Objection]

16

A.  It occurred - - <u>they occurred simultaneously, and they occurred more than likely at the end of the procedure</u> than the beginning because the laceration was one that would bleed and blood would have been spotted sooner.

Q.  And did these injuries, the brachial plexus injury and the spinal nerve injury occur at the operative site?

A.  No.

Q.  Were they even close to the area where Dr. Hrynkiw performed the surgery?

A.  One of them was close to but anatomically totally separate.  Close to in terms of inches, but not close to in terms of being susceptible to damage at surgery.

Q.  Okay.  So if I'm clear, you're saying that - -

A.  <u>It's remote</u>.

Q.  --it's remote from the surgery site?

A.  Yeah.

(*Id.* at 158-59 (emphasis added)).

The above testimony, including the "only" way that all three (3) of Ms. Smith's simultaneous injuries can be explained and the remoteness of those injuries, against the backdrop of Rosenthal's undisputed overall familiarity with the type of surgical procedure performed on Ms. Smith, satisfies *Daubert*'s reliability and helpfulness to the jury prongs.  Moreover, Defendants' reliance upon the Eleventh Circuit's decision

17

in *McDowell v. Brown*, 392 F. 3d 1283 (11th Cir. 2004) is misplaced.

More specifically, *McDowell* does not involve an analysis of the admissibility of a medical expert witness who supports his opinions on the basis of his substantial practical exposure to and knowledge of how to properly conduct a certain type of medical procedure pre-operatively (*i.e.*, the first turn), operatively, and post-operatively (*i.e.*, the second turn). Instead, *McDowell* addresses the admissibility of much more nebulous expert testimony, including "'the earlier, the better'" theory of causation (as so labeled by the district court), which was "'too vague'" to assist the trier of fact and also "lacked testing, peer review, a potential error rate, and general acceptance." 392 F.3d at 1299-1300.

Additionally, *McDowell* does not stand for the proposition that <u>all</u> medical opinion testimony must be tested or subjected to peer review for it to be admissible under Fed. R. Evid. 702. To the contrary of what Defendants' Motions to Preclude seem to imply, *Daubert* as well as other controlling cases, fully acknowledge that <u>experience alone</u> can satisfy the reliability prong under certain circumstances like those that are present in this case. For example, as the Eleventh Circuit unequivocally stated in *U.S. v. Frazier*, 387 F.3d 1244 (11th Cir. 2004):

> In fact, the plain language of Rule 702 makes this clear: expert status may be based on "knowledge, skill, experience, training, or education." (emphasis added). The Committee Note to the 2000

Amendments of Rule 702 also explains that "[n]othing in this amendment is intended to suggest that experience alone ... may not provide a sufficient foundation for expert testimony." Fed. R. Evid. 702 advisory committee's note (2000 amends.).

. . .

To evaluate the reliability of scientific expert opinion, we consider, to the extent practicable:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

. . .

Sometimes the specific [but non-exhaustive list of] *Daubert* factors will aid in determining reliability; sometimes other questions may be more useful. As a result, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152, 119 S. Ct. at 1176. Exactly how reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial. *See* Fed. R. Evid. 702 advisory committee's note (2000 amends.) ("The trial judge in *all* cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted." (emphasis added)).

*Frazier*, 387 F.3d at 1261-62 (emphasis added).

In sum, Rosenthal directly and repeatedly has testified (1) that the standard of care was breached by Hrynkiw (if he was in the room — a disputed fact for the jury

to determine) and by the hospital; and (2) that the breach of the standard of care occurred during the second turn.  Additionally, Rosenthal makes it clear that in his opinion Defendants (that is, those who were in the room, either as an individual or in a representative capacity as an agent of the hospital during the second turn) had to have done (or failed to do) one of several things (which he lists or discusses), any of which would be a breach of the standard of care, in order for Ms. Smith to have been injured as she was because all of her "simultaneous" injuries were "remote" from the actual operation site (on her body).

Further, Rosenthal has never backed off from his opinion that the possible alternative breaches of the standard of care that he attributes to Defendants are the only possible proximate causes of Ms. Smith's injuries.  Perhaps Rosenthal would have modified his testimony directly pertaining to Ms. Smith's situation if Defendants had pressed harder with their questions, and tied them concretely to her injuries, but they did not.  In other words, Defendants' generalized deposition questions (and thus Rosenthal's answers) that are the foundation of their Motions to Preclude are too abstract to discredit  Rosenthal's very specific testimony about how Ms. Smith was injured.  Therefore the court, in performing its discretionary gate-keeping function, is satisfied that Rosenthal's expert testimony is sufficiently reliable and helpful to the jury to be admissible under Fed. R. Evid. 702/*Daubert*.

20

Accordingly, Defendants' Motions to Preclude Rosenthal's testimony are **DENIED**.

### b.    Hirsch

Baptist also moves to preclude the testimony of Hirsch, a registered nurse, as a standard of care expert against the hospital.  More specifically, Plaintiffs offer Hirsch as an expert in the area of positioning and turning patients receiving surgical care.  Hirsch's primary expert criticism with respect to Ms. Smith's injuries regards the number of people that Baptist had participating in turning her.[10]  Baptist seeks exclusion on the basis of Ala. Code § 6-5-548 and Fed. R. Evid. 702/*Daubert*. Baptist's Motion to Preclude is **DENIED** as explained below.

Regarding Ala. Code  § 6-5-548, Baptist argues that Hirsch's background as a registered nurse is insufficient to make her "similarly situated" to Jones, the registered nursing expert that Baptist relies upon.   However, the Alabama Supreme Court case of *Springhill Hospitals v. Dixon*, 883 So. 2d 159 (Ala. 2003) (cited by Plaintiffs) squarely refutes this position.  In *Springhill*, the absence of an expert nurse specializing in a certain field meant that "the discipline or school of practice in which the alleged breach occurred [*i.e.*, an overdose of epinephrine to the patient] was surgical, or operating-room nursing." *Id.* at 161.  Similarly, as no nursing specialty

---

[10]The actual number of participants is a material factual dispute for the jury to resolve.

exists in this case, Hirsch meets the requirements of § 6-5-548(b) as held in *Springhill*.

As for Baptist's objection under Fed. R. Evid. 702/*Daubert*, it fails to show why Hirsch's lack of experience with Mayfield headrests and with neurological surgeries, generally, and micro cervical foraminotomy surgery, specifically, renders her testimony in the area of positioning and turning patients receiving surgical care unreliable and inadmissible.  As Hirsch has stated, she has "over twenty (20) years of operating room/surgical experience and was providing hands-on nursing care and treatment to anaesthetized patients involved in surgical procedures in the operating rooms within one year of November 6, 2003." (Doc. #67 at Ex. 3 at 1).  Baptist does not refute this experience.

Instead, Baptist states that "the acceptable standard of care for an neurological operating room nurse is not within the scope of her expertise as a nurse." (Doc. #61 at 17).  If procedures peculiar to neurological nursing as a specialty were at issue, then Baptist's position might be correct.  However, the relevant inquiry here is Hirsch's reliability as a nursing expert in the area of positioning and turning patients receiving surgical care.  Plaintiffs have demonstrated a sufficient level of reliability and helpfulness to the jury, and therefore have satisfied both Alabama law under § 6-5-548(b) and federal law under Fed. R. Evid. 702/*Daubert* in proffering Hirsch as

an expert witness.  Under such circumstances, Baptist's criticisms of Hirsch's expert testimony are, if appropriate at all, potential areas for cross-examination.

### 2.    Other Evidentiary Motions

#### a.    Fulmer Affidavit

Plaintiffs' Motion to Strike the Fulmer affidavit is based upon untimeliness under the amended scheduling order (Doc. #50) entered on May 24, 2007, and is **GRANTED**.  The amended scheduling order established July 31, 2007 as the expert witness disclosure and report deadline for Defendants.  (*Id.* at 2 ¶ 1).

While Fulmer was timely disclosed as an expert for Hrynkiw (*see* Doc. #72 at Ex. C), even under Baptist's time line of events, it did not disclose to Plaintiffs its intention to use Fulmer as one of its experts until "[a]s of August 30, 2007."  (Doc. #75 ¶ 3).  Moreover, the updated expert reports of Fulmer dated September 5, 2007, and October 16, 2006, respectively, make no mention of the standard of care as it relates to Baptist staff, and instead limit discussion to the standard of care as applied to either Hrynkiw or Hrynkiw and Powell.[11]  (*See* Doc. #72 at Ex. E ("I was asked to provide my opinion regarding the care and treatment provided to Ms. Smith by Dr. Hrynkiw.  It is my understanding that Dr. Powell is no longer involved in this lawsuit."); *id.* at Ex. D ("I was asked to provide my opinion regarding the care and

---

[11]Dr. Powell is a previously-dismissed defendant.

23

treatment provided to Ms. Smith by Dr. Hrynkiw and by Dr. Michael Powell.")).

It was not until October 9, 2008, that Plaintiffs received an affidavit from Fulmer stating: "I do not find any evidence whatsoever that any of the operating room support personnel or support staff did anything that caused or contributed to the cause the injury about which Ms. Smith now complains." (Doc. #72 at Ex. F at 2). Despite requests for an updated expert report from Fulmer, none has ever been provided, with Baptist relying instead upon the October 9, 2008, affidavit. Additionally, Fulmer has never been deposed.

The failure to timely disclose an expert should result in exclusion of the expert's testimony unless the nondisclosing party can show "substantial justification" for the failure to disclose or that the failure to disclose was harmless. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

Baptist's response does not even mention substantial justification for its late disclosure of Fulmer, much less establish the basis for the standard's application in this case. Relatedly, Baptist's response does not establish why the late disclosure is harmless. At best, Baptist contends that because Hrynkiw timely disclosed Fulmer

as an expert witness, it is entirely appropriate for Baptist to piggyback onto Hrynkiw's defensive actions as a co-defendant.  However, Rule 26(a)(2) obligates "a party" to disclose, not "a side."  Fed. R. Civ. P. Rule 26(a)(2).  Moreover, Baptist offers no controlling case authority for its untenable position.

Similarly, Baptist has not sought an extension, much less demonstrated good cause for extending the expert disclosure deadline under Rule 16.  Eleventh Circuit case law has interpreted Rule 16 to preclude modification of a scheduling order "unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'"  *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16 Advisory Committee's Note and citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).  Accordingly, the Fulmer affidavit offered in favor of Baptist is **HEREBY STRICKEN** in its entirety.

### b.    Jones Affidavit

Similar to Fulmer, Plaintiffs' Motion to Strike any expert testimony included in the Jones affidavit is **GRANTED** due to untimeliness under the amended scheduling order (Doc. #50) entered on May 24, 2007.[12]  Jones is employed as a nurse

---

[12]A disclosure of Jones as an expert witness would not have required the additional step of an expert report, however, because she is not a "retained or specially employed" expert witness or an employee of one of the defendants whose regular duties it to provide expert testimony.  *Compare* Fed. R. Civ. P. 26(a)(2)(A) *with* Fed. R. Civ. P. 26(a)(2)(B).

at Baptist and is a fact witness. She also has been deposed, but only as to her knowledge of any factual matters. Plaintiffs argue that to the extent Jones offers opinions beyond her role as a fact witness, such testimony should be stricken because Baptist never timely identified Jones as an expert witness to provide testimony on the appropriate standard of care as applied to Baptist in the area of "positioning and other aspects of Diane Smith surgical procedure" (*see* Doc. #72 at Ex. G at 3) or any other expert testimony for that matter.

Comparable to Fulmer, Baptist shows no good cause under Rule 16 for extending the expert witness designation deadline nor offers any substantial justification for (or a showing of harmless error in) the late disclosure of Jones. Instead, Baptist unpersuasively argues that because Plaintiffs knew about Jones and deposed her as a fact witness, her affidavit pertaining to the standard of care and other areas of expert opinions should not be struck. Once again, Baptist offers no controlling case authority to support its argument. Therefore, Plaintiffs' Motion to Strike the Jones affidavit is **GRANTED**, and those portions of her affidavit in which she offers expert opinion testimony are **HEREBY STRICKEN**.[13] Except as to areas

---

[13]More particularly, the following opinion-based statements by Jones in her affidavit are **STRICKEN**: (1) "The operating room support staff who assisted in Ms. Smith's surgery are specifically trained and/or are directly supervised by staff who are trained to assist with neurosurgery procedures."; (2) "We attend and participate in ongoing education in order to keep current with changing techniques

of impermissible expert testimony, Plaintiffs' Motion to Strike is **DENIED**.  In other

words, Jones will be permitted to testify only as a lay witness.

### 3.     Rule 56 Motions

With the limited exception of Plaintiffs' negligent screening, hiring, training,

supervision, and retention claim against Baptist,[14] Hrynkiw and Baptist base their

_____

and procedures in neurosurgery."; (3) "The differences in supporting neurosurgery
from general surgery would include different type of equipment utilized in surgery,
different techniques for positioning, as well [sic] differences in scrub technical
assisting skills."; (4)  the entire second full paragraph on page 2 of the affidavit as to
Baptist policy and documentation; (5) "The correct positioning of the patient is
verified by the surgeon prior to the beginning of the surgery."; (6) "At no time, either
before, during, or after her surgery, was Ms. Smith dropped" (except, of course, at
trial  Jones will be able to factually testify that she did not see anyone drop Ms. Smith
during those times that she was present and is otherwise able to satisfactorily show
that she possesses personal knowledge of such matters); (7) the entire first paragraph
on page 3 of the affidavit regarding the applicable standard of care; (8) "Furthermore,
there was nothing done by any Baptist Health System employee, who caused the
injury about which she now complains." (except, at trial  Jones will be able to
factually testify as to what she did or did not see happen to Ms. Smith, during those
times that she was present and is otherwise able to satisfactorily show that she
possesses personal knowledge of such matters); and (9) "Ms. Smith was not under the
exclusive control of Baptist employees while under anesthesia for her surgery."

[14]With respect to count four for negligent screening, hiring, training,
supervision, and retention against Baptist, Baptist points out that Plaintiffs have not
offered any expert testimony on the appropriate standard of care for training that it
breached.  The court notes that Plaintiffs did not specifically address the viability of
this claim in opposing Baptist's Motion for Summary Judgment.  For this reason,
dismissal of this count is proper on the grounds of Plaintiffs' abandonment. *See, e.g.*,
*Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim
abandoned when argument not presented in initial response to motion for summary
judgment; *Bute v. Schuller International, Inc.,* 998 F. Supp. 1473, 1477 (N.D. Ga.

Rule 56 motions on their efforts to preclude Rosenthal and Hirsch from testifying for Plaintiffs. However, as stated above, Rosenthal and Hirsch will be permitted to give expert testimony on behalf of Plaintiffs in support of Ms. Smith's injuries.

With this admissible expert testimony, Plaintiffs have adduced sufficient evidence of a triable jury issue for medical malpractice under the AMLA against Hrynkiw and Baptist. *See, e.g., Bradford v. McGee*, 534 So. 2d 1076, 1079 (Ala. 1988) ("To present a jury question, the plaintiff must adduce some evidence indicating that the alleged negligence (the breach of the appropriate standard of care) probably caused the injury. A mere possibility is insufficient.") (citations omitted).

Plaintiffs have surpassed the "mere possibility" threshold. (*See, e.g.*, Doc. #67 at Ex. 2 at 140) ("The <u>only</u> explanation that fits all of those things together . . . .")

---

1998) (finding unaddressed claim abandoned); *see also Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995); *Hudson v. Norfolk Southern Ry. Co.,* 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001); *cf. McMaster v. United States,* 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment"). Therefore, summary judgment as to count four for negligent screening, hiring, training, supervision, and retention against Baptist is **GRANTED**, and count four against Baptist is **HEREBY DISMISSED**.

(emphasis added)); *cf. Bradford*, 534 So. 2d at 1079-1080 ("'There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only.'") (citations omitted).  Therefore because Hrynkiw (Doc. #55) and Baptist (Doc. #57) have failed to meet their burden on summary judgment, their Rule 56 motions (except as to count four against Baptist) are **DENIED**.

The court notes that while this case borders on *res ipsa loquitur* and may actually cross the line in light of the expert witness exception to medical malpractice cases as restated in *Ex parte HealthSouth*,[15] it does not need to and therefore does not reach that issue on summary judgment because Plaintiffs' expert witnesses will be allowed to testify consistent with *Daubert* and the AMLA as to the standard of care and causation with respect to Ms. Smith's injuries.

## IV.   CONCLUSION

With the exception of count four of Plaintiffs' complaint, in which summary

---

[15]For example, a remote gash on the head is sufficiently analogous to operating on the wrong body part and the other examples on the non-exhaustive list of cases in which expert testimony is not required as set forth in *Ex parte HealthSouth* above. Moreover, consistent with *Ex parte HealthSouth*, a lay person is fully capable of understanding and evaluating the factual circumstances surrounding an unanticipated head laceration that an anesthetized surgical patient receives that is distant from the cervical operational site and that requires stitches and bandaging, without the need of any medical expert testimony.

judgment in favor of Baptist is **GRANTED** as explained in n.14, *supra*, Hrynkiw (Doc. #55) and Baptist (Doc. #57) have otherwise failed to meet their burden on summary judgment of demonstrating the absence of any material factual dispute and thus entitlement to judgment as a matter of law.  Accordingly, their Motions for Summary Judgment are in all other respects, **DENIED**.

Further regarding the parties' various evidentiary filings, for the reasons explained above, (1) Defendants' Motions to Preclude relating to Rosenthal and Hirsch (Docs. #56, #59, #61) are **DENIED**; (2) Baptist's Motion to Strike the Rosenthal affidavit (Doc. #77) is **DENIED**; (3) Plaintiffs' Motion to Strike the Fulmer affidavit (Doc. #71) is **GRANTED**; and (4) Plaintiffs' Motion to Strike the Jones affidavit (Doc. #71) is **GRANTED IN PART** and **DENIED IN PART**. Finally, an order setting this case for a pretrial conference will follow.

**DONE** and **ORDERED** this 28th day of April, 2008.

**VIRGINIA EMERSON HOPKINS**
United States District Judge